UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRANCES S. GILFILLAN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PENSION BENEFIT GUARANTY CORP.,<br><br>　　　　Defendant. | No. 25-cv-1411 (TSC) |

## MEMORANDUM OPINION

Plaintiff Frances S. Gilfillan, proceeding *pro se*, alleges that Defendant Pension Benefit Guaranty Corporation ("PBGC") (1) wrongfully denied her surviving spousal benefits under her late husband's pension plan, and (2) provided misleading information about her coverage prior to his death. Third Amended Complaint at 1–6, ECF No. 34 ("Am. Compl."). Plaintiff initially brought this case in the Eastern District of Pennsylvania. *See* Complaint at 1, ECF No. 1. After she filed her First Amended Complaint, pursuant to the court's directive, Defendant moved to dismiss the case for, *inter alia*, failure to state a claim under Fed. R. Civ. P. 12(b)(6). *See* Defendant's First Motion to Dismiss, ECF No. 18. In the alterative, Defendant asked the court to transfer the case to this district under 28 U.S.C. § 1406(a), which the court ordered. *See* E.D. Pa. Transfer Order, ECF No. 29.

1

In its Transfer Order, the court also denied Defendant's Motion to Dismiss without prejudice,[1] which Defendant refiled in this court. *See* Defendant's Memorandum of Points and Authorities in Support of Defendant's Second Motion to Dismiss, ECF No. 31-1 ("Def.'s Mot."). Following Defendant's Second Motion to Dismiss, Plaintiff filed a Third Amended Complaint without leave of the court. *See* Am. Compl. at 1. In light of the leniency afforded to *pro se* parties in regard to procedural requirements, the court will interpret Plaintiff's filing as a motion for leave to file another amended complaint and will GRANT that motion. *See Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 877 (D.C. Cir. 1993) (recognizing that courts freely grant *pro se* litigants leave to amend). Defendant's motion to dismiss will thus be treated as being directed at Plaintiff's Third Amended Complaint, the operative Complaint. For the following reasons, the court will GRANT Defendant's Motion to Dismiss without prejudice under Rule 12(b)(6).

## I.  BACKGROUND[2]

Richard Gilfillan, Plaintiff's late husband, was an employee of Lukens Steel Company for 38 years and a participant in Bethlehem Steel Corporation's Pension Plan ("the Plan"). Am. Compl. at 1; Exhibit ("Ex.") 1 at 6, ECF No. 34–1. Richard retired on January 31, 1991, and began to receive monthly benefits in the form of a Joint and 50% Survivor Annuity. Plaintiff's Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp'n") at 1, ECF No. 38; Ex. 1 at 5–6. Richard's wife at the time of his retirement was Mary Gilfillan. Pl.'s Opp'n at 1. Following the Plan's termination,

---

[1] The Transfer Order also denied, without prejudice, Plaintiff's implied request for leave to file a Second Amended Complaint, which she filed without leave of the court. *See* E.D. Pa. Transfer Order at 2. That filing was consequently stricken from the docket. *Id.*

[2] The background is based on the facts alleged in the operative Complaint as well as those contained in Plaintiff's attached exhibits and responsive pleadings. *See Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (noting the district court's obligation "to consider a *pro se* litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss").

the PBGC was appointed as trustee under Title IV of the Employee Retirement Income Security Act of 1974, *as amended*, 29 U.S.C. §§ 1001-1461 ("ERISA") on April 30, 2003. *See* Def,'s Mot. at 2; Pl.'s Opp'n at 1.

Mary passed away on April 13, 2003, and Richard reported her death to the PBGC. Am. Compl. at 1. Richard then married Plaintiff in July 2003 and reported the marriage to the PBGC. *Id*. The PBGC informed Richard that Plaintiff was ineligible for benefits. *Id*. Richard appealed that determination, but his appeal was denied. *Id*. Two years later, in 2005, Richard received two determination letters from the PBGC, both of which included the following statement:

> Your benefit is paid in the form of a Joint and 50% Survivor Annuity. The Joint and 50% Survivor Annuity provides you with a reduced monthly benefit for the rest of your life. Thereafter, your surviving beneficiary will receive 50% of your benefit for the rest of your beneficiary's life.

Am. Compl. at 2; Ex. 1 at 1–2. The second letter added, "The Surviving Spouse benefit is automatically provided under the pension plan for individuals who retired on other than a Deferred Vested plan with at least 15 years of continuous service. The Surviving Spouse Benefit is payable if your surviving spouse meets the eligibility requirements defined in your pension plan." Ex. 1 at 2.

For twelve years, there was no further communication between Richard and the PBGC, but Richard interpreted these letters to mean that Plaintiff would be entitled to surviving spouse benefits should Richard predecease her. Am. Compl. at 2, 5. This belief was bolstered by Richard's call to the PBGC's customer service line in 2017, which he documented as "3/9/17 - phoned -Beneficiary is automatically your spouse." *Id*. at 2. When Plaintiff called the PBGC to report Richard's death in 2019, however, the PBGC informed her that she was not entitled to benefits under his Plan. *Id*. Plaintiff thereafter contacted the PBGC on numerous occasions and was told by PBGC representatives that she was ineligible for benefits based on Richard's Plan and

3

binding federal regulations. *See* Am. Compl. at 3–4; Ex. 1 at 3–6. Specifically, they explained that 29 C.F.R. § 4022.8(d) prohibits changing the form of benefit once a benefit starts, "even if the participant remarried or the named beneficiary (survivor) dies." Ex. 1 at 5. Representatives further explained that some of their prior communications to Richard "did not reflect that he had remarried," that Plaintiff "would not be entitled to survivor benefits after his death," and that such communications "were inconsistent with the PBGC's earlier communications to him" and "inadvertently" gave Richard and Plaintiff "the incorrect impression that [she] could be entitled to a survivor benefit." Ex. 1 at 5; *see also* Am. Compl. at 3–4 (detailing, among other things, phone calls to the PBGC where employees stated there had been a "mix-up" or "mistake").

## II.  LEGAL STANDARD

A motion under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2022). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The court must assume all "well-pleaded factual allegations" are accurate, *id.* at 679, and "grant plaintiffs the benefit of all inferences that can be derived from the facts alleged," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Moreover, the pleadings of *pro se* parties are "to be liberally construed, [and] a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations

omitted). Nevertheless, the pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678

### III. ANALYSIS

#### A. Wrongful Denial of Benefits

Under ERISA, a plan beneficiary may "bring an action against [the PBGC] for appropriate equitable relief." 29 U.S.C. § 1303(f)(1). ERISA's citizen suit provision is "the exclusive means for bringing actions" against the PBGC "in its capacity as a trustee." *Id.* § 1303(f)(4). The PBGC concedes that it was appointed trustee of Richard Gilfillan's Plan. *See* Def.'s Mot. at 2. Therefore, the court need only decide whether the operative Complaint plausibly states a claim "for appropriate equitable relief" under 29 U.S.C. § 1303(f)(1). For the following reasons, the court finds that it does not.

Plaintiff's main contention is that she should be entitled to surviving spousal benefits under the terms of her late husband's Plan, but she fails to plead factual content that makes this contention "plausible." *Iqbal*, 556 U.S. at 678. Plaintiff's filings do not "quote, cite, or summarize" any of the actual terms of the Plan. *Saunders v. Saunders*, No. 23-cv-2154, 2024 WL 358181, at *1 (D.D.C. Jan. 31, 2024); *see* Am. Compl. at 1–6; Ex. 1 at 1–7. Plaintiff does not allege that she was named as a new beneficiary of Richard's Plan, nor does she allege that she became the *de facto* beneficiary under his Plan when she married him. *See* Am. Compl. at 1–6; Pl.'s Opp'n at 1–8. Plaintiff also does not appear to challenge the PBGC's underlying determination that she was not entitled to benefits, or the PBGC's denial of Richard's appeal of that determination. *See* Am. Compl. at 1–6; Pl.'s Opp'n at 1–8. Plaintiff asserts that she is "entitled to the equivalent of the benefits [she] would have received *had* [she] been a the PBGC beneficiary." Pl.'s Opp'n at 2 (emphasis added); Am. Compl. at 7. Yet, such an assertion, even under *pro se* litigants' liberal

5

pleading standard, amounts to a legal conclusion that the court may properly disregard. *See Twombly*, 550 U.S. at 555

Even if Plaintiff had made such allegations, however, she would still not be entitled to Richard's surviving spousal benefit under the governing regulations. As Defendant points out, Def.'s Mot. at 6, when a married participant in an ERISA-governed pension plan retires, a benefit must be paid in the form of a joint and survivor annuity during their life with a survivor benefit of at least 50% for their spouse. 29 U.S.C. § 1055(a)(1), (d)(1). Pursuant to the PBGC's federal regulations, "once payment of a benefit starts, the benefit form cannot be changed." 29 C.F.R. § 4022.8(d).[3] Here, it appears uncontested that Richard retired in 1991 and elected a benefit in the form of a Joint and 50% Survivor Annuity. *See* Def.'s Mot. at 6; Pl.'s Opp'n at 1 (retirement date); *see also* Ex. 1 at 3, 5–6 (benefit form). It is similarly uncontested that Mary, not Plaintiff, was married to Richard at that time. Am. Compl. at 1, Ex. 1 at 5–6; Pl.'s Opp'n at 1.

As a result, entitlement to Richard's survivor annuity irrevocably vested in Mary and could not be amended retroactively to designate Plaintiff as the spousal beneficiary. *See Vanderkam v. Pension Ben. Guar. Corp.*, 943 F. Supp. 2d 130, 141 (D.D.C. 2013) (upholding the PBGC Appeals Board's determination that the plan participant's survivor annuity benefit "irrevocably vested" in the participant's wife at the time of retirement), *aff'd sub nom. VanderKam v. VanderKam*, 776 F.3d 883 (D.C. Cir. 2015); *see also Hopkins v. A.T. & T. Global Info. Sols. Co.*, 105 F.3d 153, 156 (4th Cir. 1997) (holding that "the Surviving Spouse Benefits vest in the participant's current spouse on the date the participant retires"); *Rivers v. Central and South West Corp.*, 186 F.3d 681, 683–84 (5th Cir. 1999) (same); *Carmona v. Carmona*, 603 F.3d 1041, 1059 (9th Cir. 2010) (same).

---

[3] Plaintiff also does not challenge these regulations or their applicability to her late husband's Plan. *See* Am. Compl. at 1–6; Pl.'s Opp'n at 1–8.

This is true even though Mary predeceased Richard. *See Dorn v. Int'l Broth. of Elec. Workers*, 211 F. 3d 938, 942 (5th Cir. 2000) (per curiam) (explaining that "if, but only if, the non-participant spouse survives the participant spouse does the survivor's annuity kick in.").

**B. Equitable Estoppel**

Plaintiff also appears to challenge Defendant's recission of the erroneous determination letters it sent Richard in 2005, upon which he and Plaintiff both detrimentally relied in making financial determinations, on equitable estoppel grounds. *See* Am. Compl. at 2, 5–6; Pl.'s Opp'n at 2, 4–5. Defendant correctly points out, however, that claims for equitable estoppel against the Government require a showing of "affirmative misconduct." *See Pierce v. S.E.C.*, 786 F.3d 1027, 1038 (D.C. Cir. 2015) (quoting *Keating v. F.E.R.C.*, 569 F.3d 427, 434 (D.C. Cir. 2009)); *Morris Commc'ns, Inc. v. F.C.C.*, 566 F.3d 184, 191 (D.C. Cir. 2009). "Estoppel generally requires that government agents engage—by commission or omission—in conduct that can be characterized as misrepresentation or concealment, or, at least, behave in ways that have or will cause an egregiously unfair result." *GAO v. Gen. Acct. Off. Pers. Appeals Bd.,* 698 F.2d 516, 526 (D.C. Cir. 1983). Because the PBGC is "a federal agency and wholly-owned corporation of the U.S. Government," *Sara Lee Corp. v. Am. Bakers Ass'n Ret. Plan*, 512 F. Supp. 2d 32, 34 (D.D.C. 2007); *see also Bechtel v. Pension Ben. Guar. Corp.*, 624 F. Supp. 590, 592 n.3 (D.D.C. 1984) ("The PBGC is an agency of the federal government . . . ."), *aff'd*, 781 F.2d 906 (D.C. Cir. 1985), this heightened standard of proof applies, *see Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.*, 72 F. Supp. 2d 547, 559 (W.D. Pa. 1999).

Plaintiff alleges that Richard received two determination letters in 2005 that appeared to reverse the PBGC's prior decisions and indicated that Plaintiff would receive surviving spousal benefits under his Plan should Richard predecease her. Am. Compl. at 2; Ex. 1 at 1–2. She also

7

alleges that Defendant admitted to mistakenly providing erroneous information regarding her coverage in those letters as well as in a phone call between Richard and a PBGC representative in 2017. Ex. 1 at 5; *see also* Am. Compl. at 3–4. None of these allegations, however, demonstrate "affirmative misconduct" by the PBGC. The court agrees with Defendant that, at most, Plaintiff has alleged that the PBGC acted negligently, which is insufficient to satisfy the "high" bar required to equitably estop the Government. *See Masters Pharm., Inc. v. Drug Enf't Admin.*, 861 F.3d 206, 225 (D.C. Cir. 2017) ("Generally, ordinary negligence does not qualify as egregiously unfair conduct." (cleaned up)); *Smirnov v. Clinton*, 806 F. Supp. 2d 1, 24 (D.D.C. 2011) ("It is not enough to point to governmental 'mis' feasance to prevail in a claim of equitable estoppel against the government . . . ."), *aff'd*, 487 F. App'x 582 (D.C. Cir. 2012); *see also O.P.M. v. Richmond*, 496 U.S. 414, 428–29 (1990) (holding that erroneous advice provided by a government employee to a benefits claimant could not estop the government from denying benefits from the treasury that were not permitted by law.)

Thus, while the court is deeply sympathetic to Plaintiff's plight, it finds that she has failed to state a claim upon which relief may be granted.

IV. **CONCLUSION**

Accordingly, Defendant's Motion to Dismiss is **GRANTED** without prejudice. A separate order will follow.

Date: December 17, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge